**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **LISA POUNDS BRADSHAW,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:18-cv-00947-P-BP** |
| | § | |
| **ANDREW M. SAUL,[1]** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Lisa Pounds Bradshaw ("Bradshaw") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of her application for a period of disability, disability insurance benefits ("DIB"), and widow's insurance benefits ("WIB") under Title II of the Social Security Act ("SSA"); and Supplemental Security Income ("SSI") payments under Title XVI. ECF Nos. 1 and 17. After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that United States District Judge Mark T. Pittman **AFFIRM** the Commissioner's decision.

## I. STATEMENT OF THE CASE

On March 22, 2016, Bradshaw filed applications for a period of disability, DIB, and WIB. *See* SSA Admin. R. (hereinafter, "Tr.") 15, ECF No. 14-1. She also filed an application for SSI on

[1] Andrew M. Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

July 8, 2015. *Id.* In all applications, Bradshaw alleged that her disability began on June 3, 2015. *Id.* The Commissioner initially denied her claim on January 29, 2016 and denied it again on reconsideration on March 9, 2016. *Id.* Bradshaw requested a hearing, which was held before Administrative Law Judge ("ALJ") Kevin Batik on May 24, 2017 in Fort Worth, Texas, with Bradshaw and her attorney present. *Id.* The ALJ issued his decision on November 15, 2017, finding that Bradshaw was not disabled. Tr. 12, 28.

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Bradshaw had not engaged in substantial gainful activity since June 3, 2015, the alleged onset date. Tr. 18. At step two, he determined that Bradshaw's combined physical impairments constituted a severe impairment, comprised of degenerative disc disease of the cervical and lumbar spine, diabetes, diabetic neuropathy, carpal tunnel syndrome, obesity, osteoarthritis, bursitis of the hips, heel spur, obstructive sleep apnea, and asthma. *Id.* The ALJ further considered, *inter alia*, the four areas of mental functioning also known as the "paragraph B" criteria and found that Bradshaw's mental impairment was not severe because it caused no more than mild limitation in any of the functional areas. Tr. 19. At step three, the ALJ found that Bradshaw's impairments did not meet or equal in combination one of the impairments listed in 20 C.F.R. pt. 404(p). Tr. 20. At step four, the ALJ ruled that Bradshaw had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Tr. 20. The ALJ further found that Bradshaw can have no more than occasional exposure to dust, fumes, odors, and pulmonary irritants; can frequently handle, finger, and reach with the bilateral upper extremities; and cannot climb ladders, ropes, or scaffolds, or use foot controls. *Id.* Additionally, the ALJ held that Bradshaw is unable to perform any past relevant work as a caregiver, home attendant, billing

clerk, or assembler. Tr. 26. At step five, the ALJ found that considering Bradshaw's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Bradshaw could perform. Tr. 27.

The Appeals Council denied review on October 1, 2018. Tr. 1. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II. FACTUAL BACKGROUND

According to her pleadings, testimony at the administrative hearing, and the administrative record, Bradshaw was born on July 29, 1966 and has at least a high school education. Tr. 26. Her employment history includes work as a caregiver, home attendant, billing clerk, and assembler. *Id.* She asserts that a combination of impairments renders her disabled under the SSA. Tr. 247.

## III. STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. § 404. The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or

mental abilities for pay or profit. 20 C.F.R. § 404.1527; *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. § 404.1520(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(f); *Crowley v. Apfel*, 197 F.3d 197, 197-98 (5th Cir. 1999). "The claimant bears the burden of showing that [she] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC—"the most [a claimant] can still do despite [his] limitation." 20 C.F.R. § 416.945(a)(1); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

This Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "It is more than a mere scintilla and less than a preponderance." *Id.* "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the

decision." *Id.* The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## IV. ANALYSIS

Bradshaw raises two issues on appeal. She claims that (1) the ALJ failed to evaluate the medical opinion evidence consistent with the applicable regulations, agency policy, and Fifth Circuit precedent; and (2) the ALJ erred in his credibility assessment by failing to take into consideration Bradshaw's consistent work history. ECF No. 17 at 3. The undersigned will discuss the second issue first.

### A. The ALJ Properly Evaluated Bradshaw's Work History in Assessing Her Credibility.

Stressing that she worked the last twenty-one years of her total of twenty-nine years of employment consecutively without interruption up until the onset of her disability in 2012, Bradshaw argues that the ALJ plainly erred by failing to take into consideration her consistent and exemplary work history in evaluating her credibility. *Id.* at 15-17. Although Bradshaw acknowledges that courts afford deference to an ALJ's credibility determinations, she cites to 20 C.F.R. § 404.1529(c)(3), SSRs 96-8p and 16-3p, and several cases in support of her contention that a claimant with a good work history should be viewed as particularly credible. *Id.*

Some authority supports Bradshaw's argument. SSR 96-8P identifies "[e]vidence from attempts to work" as a factor to consider in determining a claimant's RFC, and the regulations provide that the ALJ "will consider all of the evidence presented, including information about your prior work record." SSR 96-8P, 1996 WL 374184, at *5 (S.S.A. Jul. 2, 1996); 20 C.F.R. §

404.1529(c)(3). Additionally, Bradshaw cites three out-of-circuit decisions which note that evidence of a strong work history helps bolster a claimant's credibility. *See, e.g.*, *Taybron v. Harris*, 667 F.2d 412, n.6 (3d Cir. 1981) ("[W]hen the claimant has worked for a long period of time, his testimony about his work capabilities should be accorded substantial credibility."); *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (holding that the adjudicator "must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record").

But in the Fifth Circuit, courts do not require an ALJ to consider a claimant's lengthy work history as evidence of her credibility. *McGee v. Astrue*, No. 2:10-CV-1826, 2012 WL 7456174, at *8 (W.D. La. Nov. 26, 2012), *report and recommendation adopted*, No. 2:10-CV-1826, 2013 WL 704624 (W.D. La. Feb. 26, 2013) (ALJ did not err in failing to consider plaintiff's long work history when assessing credibility because "a claimant's work history is but one factor to consider when evaluating plaintiff's symptoms"); *Sanchez v. Berryhill*, No. CV M-16-030, 2017 WL 2117526, at *9 (S.D. Tex. Mar. 31, 2017), *report and recommendation adopted sub nom. Sanchez v. Berrill*, No. 7:16-CV-30, 2017 WL 2080239 (S.D. Tex. May 15, 2017) (the Fifth Circuit does recognize a "rule" that a claimant with a good work history is entitled to substantial credibility; "the ALJ was not required as a matter of law to draw such a favorable credibility inference from Plaintiff's work history (particularly to the exclusion of other evidence [in the] record)").

The decisions of district courts in this circuit cited by Bradshaw do not reach a contrary conclusion. In *Roberson v. Colvin*, this Court found that "while it would have been better for the ALJ to acknowledge plaintiff's 30-year consistent work history, the failure to reference such in his

findings d[id] not mean he was not aware of the history" and that "[n]o reversible error ha[d] been shown." No. 2:13-CV-197, 2015 WL 1408925, at *7-8 (N.D. Tex. Mar. 27, 2015). Likewise, in *Lorah v. Comm'r of Soc. Sec.*, the court held that even "assuming that the ALJ had afforded claimant an extra measure of credibility because she was a good and faithful employee, the ALJ would remain justified in finding that she is not disabled . . . ." No. CIV.A. 14-0749, 2015 WL 4395351, at *7 (W.D. La. July. 16, 2015).

In assessing Bradshaw's statements regarding the intensity, persistence, and limiting effects of her symptoms, the ALJ specifically stated that he "has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence . . . ." Tr. 27. Bradshaw has failed to provide any reason to question the ALJ's general statement, nor has she shown that a consideration of her work history as a separate item might have led to a different result. Moreover, it is not reversible error when the ALJ fails to consider the claimant's work history to determine credibility as the Fifth Circuit has held that any such error would be harmless. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994); *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003). "The ALJ is in the best position to make such determinations of credibility based on the full record of evidence and live testimony, and he need not explain every piece of evidence." *Benton ex rel. Benton v. Astrue*, No. 3:12-CV-0874-D, 2012 WL 5451819, at *7 (N.D. Tex. Nov. 8, 2012) (citing *Falco*, 27 F.3d at 163). Here, the ALJ exercised his discretion to consider other factors besides Bradshaw's work history to determine whether Bradshaw was disabled, and work history is not a determinative factor. Under these circumstances, the undersigned finds that the ALJ did not commit reversible error by failing to specifically discuss Bradshaw's work history in his findings.

**B. The ALJ Did Not Err in Declining to Give Controlling Weight to the Medical Opinion of Bradshaw's Treating Physician.**

Bradshaw contends that the ALJ rejected the medical opinion of treating physician Dr. Grissom against the regulations, agency policy, and Fifth Circuit precedent regarding the proper evaluation of medical opinion evidence. ECF No. 17 at 6. She argues that the functional limitations described by Dr. Grissom are more restrictive and detailed than those in the ALJ's RFC finding and are consistent with a finding of "disabled." *Id.* at 8. She further asserts that the ALJ failed to provide the requisite good cause for rejecting Dr. Grissom's medical opinions. Had Dr. Grissom's medical opinions properly been analyzed and credited, she argues, the ALJ would have found her disabled. *Id.*

The ALJ should give the opinion of a treating physician controlling weight if (1) medically acceptable clinical and laboratory diagnostic techniques support the opinion and (2) the opinion is not inconsistent with other substantial evidence in the record. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); 20 C.F.R. § 404.1527(c)(2). The ALJ can decrease the weight assigned to a treating physician's opinion for good cause, such as a lack of acceptable diagnostic techniques or other evidence supporting the opinion, or if the opinion is merely a conclusory statement. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Conclusory statements that a claimant is unable to work or is disabled are legal conclusions, not medical opinions, and do not merit any special significance. *See* 20 C.F.R. § 404.1527(d); *see also Frank*, 326 F.3d at 620. Furthermore, the ALJ need not specifically list evidence accepted and rejected in reaching his findings. *See Falco*, 27 F.3d at 164. Ultimately, the determination of disability remains with the ALJ. *LeMarr v. Astrue*, No. 2:09-CV-0060, 2011 WL 4435294, at *11 (N.D. Tex. Sept. 6, 2011), *report and recommendation adopted*, No. 2:09-CV-0060, 2011 WL 4439467 (N.D. Tex. Sept. 23, 2011).

In *Newton*, the Fifth Circuit held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." 209 F.3d at 453 (emphasis in original). Without additional medical opinions, the ALJ must evaluate the following: (1) examining relationship, including "whether the medical opinion is from a treating source, non-treating source, or non-examining source" *Mathews v. Colvin*, No. 4:14-CV-906-BL, 2016 WL 75081, at *3 (N.D. Tex. Jan. 6, 2016); (2) treatment relationship, including length, nature, and extent, along with frequency of examinations; (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c); SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996); SSR 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996). The ALJ must apply these factors only if there is no reliable medical evidence from another treating or examining physician that controverts the treating physician's opinion. *See Newton*, 209 F.3d at 455-58.

When multiple physicians have treated or examined the claimant, the ALJ may weigh the treating physician's opinion on disability against the medical opinion of other physicians who have specific medical bases for contrary opinions concerning the claimant's disability. *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507-11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.").

Dr. Grissom assessed Bradshaw's physical abilities on three different occasions. On November 16, 2015, he completed his first physical medical source statement in which he stated

that he had been treating Bradshaw for more than seven years. Tr. 373. Diagnosing Bradshaw with cervical spondylosis and spinal stenosis, Dr. Grissom concluded that Bradshaw could walk one city block, sit for one hour at a time and about two hours total and stand for 30 minutes at a time but for less than two hours total during an eight-hour day, and occasionally lift less than ten pounds. Tr. 373-74. He further opined that she requires the option to shift positions at will between sitting, standing, or walking, and that she would need unscheduled 15-minute breaks every two hours. *Id.* Additionally, he stated that she could only use her hands for gross and fine manipulation ten percent of the time and twist zero percent of the time, but indicated she would be able to bend occasionally. Tr. 374-375. He recommended that she avoid exposure to the following elements: extreme cold; extreme heat; high humidity; fumes; odors; dusts; gases; perfumes; cigarette smoke; soldering fluxes; solvents/cleaners; and chemicals. Tr. 375. Finally, he opined that her impairments would cause her to be absent from work more than twice per month. *Id.*

Dr. Grissom completed his second medical source statement on May 8, 2016, indicating diagnoses of cervical spinal stenosis and lumbar spondylosis. Tr. 822. This second opinion generally provided for a greater degree of physical limitations. On this occasion, Dr. Grissom indicated that Bradshaw could sit for thirty minutes at a time, but for less than two hours total and stand for fifteen minutes at a time, but for less than two hours total during an eight-hour day. *Id.* He also opined that she would be able to use her hands for gross manipulation twenty-five percent of the time and would not be able to perform fine manipulation or reach. Tr. 823. Furthermore, he stated that she would not be able to bend or twist at all. Tr. 824. On March 6, 2017, Dr. Grissom provided his final medical source statement, where he continued to indicate diagnoses of cervical spinal stenosis and spinal stenosis. Tr. 1167, 1169. He stated that Bradshaw could sit for one hour at a time, but for about four hours total and stand for ten minutes at a time, but for less than two

hours total during an eight-hour day. Tr.1167. Additionally, he indicated that she would only be able to use her hands for gross manipulation twenty percent of the time and would not be able to perform fine manipulation or reach. Tr. 1168. He also opined that she would not be able to bend or twist at all. Tr. 1169.

The ALJ correctly observed that Dr. Grissom's opinions varied significantly from each other without apparent change in Bradshaw's medical condition. Tr. 25. Specifically, he noted the unexplained difference in the number of hours Bradshaw could sit for during an eight-hour day and the wide variations in the range of handling limits indicated in his medical source statements. *Id.* Furthermore, the ALJ found that Dr. Grissom's opinions were inconsistent with other substantial evidence. Tr. 22-26. The ALJ referred to, *inter alia*, progress notes dated June 3, 2015, which indicated that Bradshaw's foot examination had resulted in a negative finding of neuropathy. Tr. 427. Additionally, a hip x-ray performed on July 26, 2015 demonstrated only mild osteoarthritic changes, and physical therapy notes dated July 7, 2015 showed that Bradshaw had 4+/5 strength in her upper extremities and 5/5 strength in her lower extremities. Tr. 428, 476, 699. Notes from October 2015 showed normal bilateral feet with mild heel spurring, nothing major with mild sensory impairment, 5/5 strength, and full range of motion. Tr. 439, 754. On December 3, 2015, Bradshaw had normal physical examination with mild asthma noted, and notes dated March 3, 2016 showed that she had a normal physical examination except for tenderness to palpation over her hips noted as having been improved. Tr. 771, 951. These observations are inconsistent with Dr. Grissom's opinions regarding the nature and severity of Bradshaw's injuries and support the finding that Bradshaw's physical condition was not severely impaired to the extent indicated by Dr. Grissom in his medical source statements. Accordingly, the undersigned concludes that the

ALJ's findings, when considered alongside the description of Dr. Grissom's reports, constitute good cause for the weight accorded to Dr. Grissom's medical opinions.

The ALJ also stressed that Dr. Grissom had not referenced any medical evidence or offered any explanation for his opinions. Tr 25-26. Dr. Grissom provided his opinions using a check-the-box format with no explanation provided for the limitations he assessed. Tr. 373, 822, 1167. It is well-established law in the Fifth Circuit that the ALJ is entitled to accord little or no weight to similar "check-the-box" forms. *Rollins v. Astrue*, 464 F. App'x 353, 357 n.5 (5th Cir. 2012) (finding that "check-the-box" forms without additional explanations may be given less weight but reserving the determination for the ALJ); *Foster v. Astrue*, 410 F. Appx. 831, 833 (5th Cir. 2011) (finding good cause to give partial weight to a treating physician's questionnaire-format opinion "due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examination . . ."). Accordingly, the ALJ was entitled to assign only partial weight to Dr. Grissom's assessment.

Finally, Bradshaw argues that the ALJ had a duty to develop the record regarding his finding of inconsistency in the treating source opinions. ECF No. 17 at 14-15. A court may reverse the ALJ's decision if the claimant can show that "(1) the ALJ failed to fulfill his duty to develop the record adequately and (2) that failure prejudiced the plaintiff." *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir.2012). Here, Bradshaw contends that the ALJ could have obtained a review of the entire file and testimony from a medical expert, arranged for a consultative examination, re-contacted Dr. Grissom for clarification, or sent the entire file back to the state agency for review by a medical consultant. ECF No. 17 at 15. However, Bradshaw has failed to establish that further development of the record was necessary for the ALJ to make a determination, as she has not demonstrated what additional evidence she expects a medical expert, consultative examiner, Dr.

Grissom, or other medical consultant would provide that was not already contained in the record. Moreover, Bradshaw has not shown prejudice, as she has offered no evidence that any additional evidence that the ALJ could have developed would might have changed the outcome. "A mere allegation that additional beneficial evidence might have been gathered had the error not occurred is insufficient" to show prejudice. *Jones*, 691 F.3d at 735. As a result, reversal of the ALJ's decision on this point is not required.

## V. CONCLUSION

The ALJ properly evaluated Bradshaw's work history when making his credibility determination. He also properly weighed the opinion of Dr. Grissom in his RFC assessment. In doing so, the ALJ applied the correct legal standards, and substantial evidence supports his decision. For these reasons, the undersigned **RECOMMENDS** that Judge Pittman **AFFIRM** the Commissioner's decision.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d

1415, 1417 (5th Cir. 1996) (en banc).

Signed on December 12, 2019.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE